UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH PEMPEK, on behalf of herself and all other persons similarly situated, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> HERCULES FORWARDING, INC., and MELANIE BURNHAM, individually <br><br> Defendants. | Case No. 22-cv-4760 |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Elizabeth Pempek ("Plaintiff"), through her attorneys, Loftus & Eisenberg, Ltd., on behalf of herself and all other persons similarly situated, known and unknown, for her Complaint against Hercules Forwarding, Inc. ("Hercules Forwarding"), and Melanie Burnham, ("Burnham"), individually (collectively "Defendants"), states as follows:

**I. NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, for Defendants' failure to pay overtime wages to Plaintiff and other hourly current and former employees (hereafter "similarly situated employees"), and under the Biometric Information Privacy Act ("BIPA") for the unauthorized collection and retention of Plaintiff's and similarly situated employees' biometric information.

2. During one or more individual workweeks during the prior three years, Plaintiff and other similarly situated employees worked for Defendants in excess of forty (40) hours per

week but were not paid overtime at a rate of one and one-half times their regular rates of pay.

3. Plaintiff brings her FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiff's consent form to act as representative party plaintiff in this FLSA overtime lawsuit is attached hereto as Exhibit A.

4. Plaintiff brings her IMWL claim as a class action pursuant to Fed. R. Civ. P. 23.

5. Plaintiff also brings BIPA claim as a class action pursuant to Fed. R. Civ. P. 23.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's FLSA claim, arising under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's IMWL and BIPA class claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391 because the facts and events giving rise to Plaintiff's claims occurred in this judicial district.

## III. THE PARTIES

9. Plaintiff resides in and is domiciled in this judicial district.

10. Hercules Forwarding is a California corporation, licensed to do business in Illinois. Hercules Forwarding is an "enterprise" as that term is defined in Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

11. Hercules Forwarding is an enterprise engaged in commerce within the meaning of Section 203(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

12. During the last three years, Defendant Hercules Forwarding's annual gross volume of sales made or business done has exceeded $500,000.00, exclusive of excise taxes.

13. During the course of her employment with Hercules Forwarding, Plaintiff

participated in interstate commerce.

14. Hercules Forwarding was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

15. Hercules Forwarding was Plaintiff's "employer" as defined by the IMWL. 820 ILCS 105/3(c).

16. Plaintiff was Hercules Forwarding's "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e)(1).

17. Plaintiff was Hercules Forwarding's "employee" as defined by the IMWL. 820 ILCS 105/3(d).

18. Melanie Burnham is the Chief Financial Officer of Hercules Forwarding and was Plaintiff's supervisor.

19. Burnham is involved in the day-to-day business operations of Hercules Forwarding

20. Burnham hires and fires Hercules Forwarding employees, directs and supervises the work of Hercules Forwarding employees, signs on Hercules Forwarding's checking accounts, and makes decisions regarding employee compensation and capital expenditures.

21. Burnham was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

22. Burnham was Plaintiff's "employer" as that term is defined by the IMWL, 820 ILCS 105/3(c).

23. Plaintiff was Burnham's "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e)(1).

24. Plaintiff was Burnham's "employee" as defined by the IMWL, 820 ILCS 105/3(d).

25. Hercules Forwarding is a "private entity" under the Biometric Information Privacy

Act. 740 ILCS 14/10.

## IV. FACTS COMMON TO ALL COUNTS

26. Founded in 1985, Hercules Forwarding is an asset-based motor carrier incorporated in California and headquartered in New Westminster, British Columbia. The company employs approximately 475 employees at its 26 locations in the US and Canada, including Hickory Hills, Cook County, Illinois, where Plaintiff worked.

27. Defendants utilize a company-wide payroll system through Automatic Data Processing, Inc. ("ADP"). ADP emphasizes the benefit of using its tools to simplify overtime compliance. "Overtime rules specific to individual businesses and locations are then applied and sent for payroll processing. Managers only need to approve timecards, not calculate hours or apply overtime rules." "Time and Attendance Solutions for your Business," ADP, https://www.adp.com/what-we-offer/time-and-attendance.aspx?__hstc=8425706.bb9e8786acb0637781667bc4085c227a.1640120964817.1640120964817.1640120964817.1&__hssc=8425706.1.1640120964818&__hsfp=3901791648 (as accessed Dec. 21, 2021). ADP alerts employers to overtime hours entered in its system and, on information and belief, permits employers to create exceptions to the programmed overtime rules.

28. From approximately May 2002 until approximately December 20, 2021, Plaintiff worked for Defendants as an hourly employee. Her role did not substantially require the exercise of discretion or independent judgment. During her tenure, Defendants classified Plaintiff in ADP as a regular, full-time, clerical employee in the Corporate Business Unit, Administrative Department.

29. Defendants' biometric timekeeping system required Plaintiff and other employees to scan their fingerprints to record when they clocked in or out of a shift.

30. During the last three years, Defendants employed other hourly employees. In one or more weeks during the prior three (3) years, Plaintiff worked for one or more Defendants in excess of forty (40) hours.

31. For example, Plaintiff customarily worked approximately 42.5 hours per week: Monday through Friday from approximately 9:00 am to 5:30 pm, without a required meal break.

32. During her employment, Defendants did not pay Plaintiff overtime pay at a rate of one and one-half times her regular rate of pay when she worked more than forty hours per workweek.

33. In one or more weeks during the prior three (3) years, Defendants did not pay other hourly employees overtime pay at a rate of one and one-half times their regular rates of pay when they worked more than forty (40) hours per workweek.

34. Instead, Defendants compensated all hours worked, including hours worked over 40 in the same week at employees' straight time regular rate of pay for all time worked.

35. A few days before Defendants terminated Plaintiff, on or about December 14, 2021, Plaintiff met with her newly appointed supervisor Brianna Kush for approximately two-and-a-half hours to complain about the "toxic workplace environment" at Hercules Forwarding, or words to that effect, and compliance with wage and hour laws. Kush minimized Plaintiff's concerns about proper wage payment, telling Plaintiff that Pempek made more than anyone else at the company other than Kush's mother, Defendant Melanie Burnham. Kush explained that she would follow up on Plaintiff's concerns by that coming Friday.

36. On December 16, 2021, Plaintiff returned to work after a pre-approved December 15th doctor's appointment to find that she had been locked out of her workstation. Plaintiff then met with Kush and their regional manager, who told Plaintiff she would be suspended pending an

investigation into Plaintiff's behavior at the December 14th meeting. When Plaintiff inquired about her options, Kush responded that her option was to resign.

37. The same day, Hercules Forwarding reversed the direct deposit of Plaintiff's annual bonus.

38. To Plaintiff's knowledge, the promised investigation never took place.

39. Instead, on Monday, December 20th, Betty Magana in Human Resources called Plaintiff to inform her that she had been fired after nearly twenty years of meritorious service as of the previous Friday.

## V. CLAIMS

### COUNT I
### Violation of the Fair Labor Standards Act – Overtime Wages
### (Plaintiff on her own behalf and on behalf of similarly-situated employees)

40. Plaintiff hereby realleges and incorporates paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

41. This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. § 201 *et seq.,* for their failure to pay Plaintiff and other similarly-situated clerical employees overtime wages at a rate of one and one-half times their regular rate of pay for all time worked over forty (40) hours during individual workweeks.

42. In one or more workweeks during the prior three years, Plaintiff and similarly-situated clerical employees worked for Defendants in excess of forty (40) hours per week.

43. Pursuant to 29 U.S.C. § 207, Plaintiff was entitled to be compensated at a rate of one and one-half times her regular rate of pay for all time she worked in excess of forty (40) hours during individual workweeks.

44. In one or more workweeks during the last three (3) years, Defendants did not pay

Plaintiff one and one-half times her regular rate for the time he worked over forty (40) hours in individual workweeks and instead paid her straight-time regular rate for all time worked.

45. Pursuant to 29 U.S.C. § 207, other similarly situated employees in non-safety affecting roles were entitled to be compensated at a rate of one and one-half times their regular rates of pay for all time they worked in excess of forty (40) hours during individual workweeks.

46. In one or more workweeks during the last three (3) years, Defendants did not pay other similarly situated employees in non-safety affecting roles one and one-half times their regular rates of pay for all time worked over forty (40) hours in individual workweeks and instead paid them at their straight time regular rates for all time worked.

47. Defendants violated the FLSA by failing to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours in one or more individual workweeks.

48. Defendants violated the FLSA by failing to pay similarly situated employees in non-saftey affecting roles overtime wages for hours worked in excess of forty (40) hours in one or more individual work weeks.

49. During her employment with Defendants, Plaintiff was not provided a required meal break per work shift.

50. Other similarly-situated employees in non-safety affecting roles were typically required to work through their legally required meal break.

51. In one or more workweeks during the last three (3) years, Defendants deducted thirty (30) minutes from Plaintiff's hours worked to account for the meal break during her shift.

52. In one or more workweeks during the last three (3) years, Defendants deducted thirty (30) minutes per shift from the hours worked by similarly situated employees to account for the meal break.

53. Pursuant to 29 CFR § 785.19, "[b[ona fide meal periods are not worktime….The employee must be completely relieved from duty for the purposes of eating regular meals." Defendants violated the FLSA by failing to pay Plaintiff for the time she was required to work through meal breaks.

54. Defendants violated the FLSA by failing to pay similarly situated employees for work completed during purported meal breaks.

55. As a direct and proximate result of Defendants' willful violations of the FLSA, Plaintiff and other similarly-situated employees have suffered a loss of income and other damages. They are entitled to liquidated damages and attorneys' fees and costs incurred in pursuing this claim.

WHEREFORE, Plaintiff and other similarly situated clerical employees pray for a judgment against Defendants as follows:

    A.    designation of this action as a collective action and prompt issuance of notice to similarly-situated clerical employees pursuant to 29 U.S.C. § 216(b) appraising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

    B.    judgment in the amount of the overtime wages and improperly deducted meal times owed to Plaintiff and all other similarly-situated clerical employees who join this lawsuit;

    C.    liquidated damages in an amount equal to the amount of unpaid overtime wages;

    D.    reasonable attorneys' fees and costs incurred in the filing and prosecution of this action; and

    E.    such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of the Fair Labor Standards Act – Retaliation
### (Plaintiff, individually)

56. Plaintiff hereby realleges and incorporates paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

57. This count arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et seq.,* for terminating Plaintiff in retaliation for her complaint about not being paid as required by law.

58. Less than one week after Plaintiff complained to her supervisor about Hercules Forwarding's wage practices, Defendants fired Plaintiff after nearly twenty years of meritorious service.

59. Section 215(a)(3) of the FLSA prohibits an employer from discharging or discriminating against an employee because an employee has complained about violations of the FLSA.

60. Defendants discriminated and retaliated against Plaintiff because she complained that Hercules Forwarding was not paying wages as required under the FLSA.

61. As a direct and proximate result of Defendants' willful violation of the FLSA, Plaintiff has lost significant wages, suffered emotional distress, and incurred other damages. She is entitled to liquidated damages and attorneys' fees and costs incurred in pursuing this claim.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. Damages for emotional distress caused by Plaintiff's unlawful termination from employment;

B. Reasonable attorneys' fees and costs incurred in the filing and prosecution of this action; and

C. Such other and further monetary and non-monetary relief available to Plaintiff under the FLSA and as this Court deems just and proper.

**COUNT III**
**Violation of the Illinois Minimum Wage Law – Overtime Wages**
**(Plaintiff on her own behalf and on behalf of similarly-situated employees)**

62. Plaintiff hereby realleges and incorporates paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

63. This count arises from Defendants' violation of the IMWL, 820 ILCS 105/1 *et seq.*, for their failure to pay Plaintiff and members of the overtime class she seeks to represent overtime pay at a rate of one and one-half times their regular rate of pay for all time worked in excess of forty (40) hours during individual workweeks.

64. During the prior three years, Defendants required Plaintiff to work more than forty (40) hours in one or more individual workweeks.

65. Other similarly-situated employees were required by Defendants to work more than forty (40) hours in one or more individual workweeks.

66. For all time worked in excess of forty (40) hours in an individual workweek, Plaintiff was entitled to be paid one and one-half times her regular rate of pay.

67. Defendants' other similarly situated employees performing non-safety affecting roles were entitled to be paid one and one-half times their regular rates of pay when they worked more than forty (40) hours in an individual workweek.

68. Defendants did not pay Plaintiff overtime at one and one-half times her regular rate, and instead paid Plaintiff her straight time regular rate for all time worked over forty (40) hours during one or more individual workweeks.

69. Defendants did not pay similarly situated employees overtime at one and one-half times their regular rates, and instead paid them their straight time regular rates for all time worked, including time worked in excess of forty (40) hours, during one or more individual workweeks.

70. The number of similarly situated employees who worked for Defendant in Illinois in the prior three years and who were not paid overtime at one and one-half times their regular rates of pay when they worked more than forty (40) hours per week (the "Overtime Class") exceeds 40 individuals over the last three (3) years.

71. Defendants' failure to pay Plaintiff and the Overtime Class at one and one-half times their regular rates of pay when they worked more than forty (40) hours per week violated the overtime wage provisions of the IMWL, 820 ILCS 105/4a.

72. This Count is brought pursuant to Fed. R. Civ. P. 23 because the Overtime Class is so numerous that joinder of all members is impracticable.

73. Plaintiff and the Overtime Class are equally affected by Defendants' overtime violations, and relief is sought for the benefit of Plaintiff and the Overtime Class Plaintiff seeks to represent.

74. The issues involved in this Count present common questions of law and fact.

75. Those common questions of law and fact predominate over any variations which may exist between members of the Overtime Class Plaintiff seeks to represent.

76. Plaintiff and the class of similarly situated employees, on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely owed wages plus penalties, interest, attorneys' fees, and the cost of the litigation.

77. The overtime violations alleged by Plaintiff are the result of Defendants' generally applicable policies and practices, and the common questions presented will predominate over any individual questions in this action.

78. Plaintiff believes and asserts that she is able to fairly and adequately represent and protect the interests of the overtime class.

79. Plaintiff's counsel is experienced in the prosecution of class actions.

80. If individual actions were required to be brought by each member of the Overtime Class injured or affected by Defendants' overtime violations, it would necessarily result in a multiplicity of lawsuits, creating hardship to the individuals and to the Court, as well as to Defendants.

81. A class action is a superior method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Overtime Class is entitled.

82. Pursuant to 820 ILCS 105/12(a), Plaintiff and the Overtime Class she seeks to represent are entitled to recover overtime wages for up to three years prior to the filing of this lawsuit, plus punitive damages in an amount of two percent (2%) per month of the amount of the underpayments.

WHEREFORE, Plaintiff and the Overtime Class pray for judgment against Defendants as follows:

A. A determination that this action may be maintained as a class action under Fed. R. Civ. P. 23;

B. A judgment in the amount of all overtime wages owed to Plaintiff and the overtime class members under the IMWL;

C. Punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

D. Reasonable attorneys' fees and costs incurred in the filing and prosecution of this action as provided in 820 ILCS 105/12(a); and

E. Such other and further relief as this Court deems just and proper.

**COUNT IV**
**Violation of the Biometric Information Privacy Act**
**(Class Action)**

83. Plaintiff hereby realleges and incorporates paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

84. In enacting the Biometric Information Privacy Act, the Illinois legislature recognized that the full ramifications of biometric technology are not yet fully known and so the public will benefit from "regulations on the collection, use, safeguarding, handling, storage retention, and description of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

85. BIPA prohibits a "private entity" from capturing or collecting biometric identifiers or information from an individual unless that private entity first obtains the individual's written consent or employment-related release authorizing the private entity to capture or collect an individual's biometric identifiers and/or information. 740 ILCS 14/15(b)(3).

86. BIPA prohibits a private entity from capturing or collecting biometric identifiers or information from an individual unless that private entity first informs the individual, in writing, of the following: (a) that the private entity is collecting biometric identifiers or information, (b) the purpose of such collection, and (c) the length of time the private entity will retain the biometric identifiers or information. 740 ILCS 14/15(b)(1)(b).

87. In addition, BIPA prohibits a private entity from possessing biometric identifiers or information unless it first creates a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information. 740 ILCS 14/15(a).

88. Finally, BIPA prohibits a private entity from disclosing or otherwise disseminating biometric identifiers or information without first obtaining an individual's consent for that

disclosure or dissemination, unless the disclosure or dissemination was (a) in furtherance of an authorized financial transaction, (b) authorized by law, or (c) pursuant to a valid warrant or subpoena. 740 ILCS 14/15(d).

89. Defendants collected, stored, used, and transferred the unique biometric fingerprint identifiers of Plaintiff and, on information and belief, others similarly situated employees without following the strictures of BIPA.

90. Defendants did not provide Plaintiff any written materials about their collection, retention, destruction, use, or dissemination of Plaintiff's fingerprint.

91. Defendants never obtained Plaintiff's written consent before collecting, storing, disseminating, or using Plaintiff's fingerprint.

92. Defendants diminished the value of Plaintiff's biometric identifiers and information by storing them without publishing data retention and destruction policies required by BIPA.

93. Plaintiff seeks to represent a class that is comprised of and defined as:

> Hourly paid workers employed in Illinois by Defendants since October 7, 2020, who were required to scan their fingerprints in Defendants' timekeeping system (the "BIPA Class").

94. Plaintiff's and the BIPA Class' fingerprints and/or scan of fingers each qualify as "biometric identifier[s]" as defined by the Biometric Information Privacy Act. 740 ILCS 14/10.

95. Defendants have "biometric information" from Plaintiff and the BIPA Class based on their acquisition and retention of Plaintiff's and the Class' "biometric identifier[s]," as defined in the previous paragraph.

96. Plaintiff and the BIPA Class are similarly situated to one another because they were all subject to the same allegedly illegal practices: being required to scan their fingerprints in Defendants' timekeeping system despite Defendants failing to adhere to the requirements of the

BIPA.

97. The issues involved in this Count present common questions of law and fact, including whether Defendants required the BIPA Class to use their fingerprints in Defendants' timekeeping system to clock in or out of shifts; whether the Class' fingerprints qualify as "biometric identifiers" or "biometric information" under BIPA, and whether Defendants complied with the procedures of BIPA.

98. These common questions of law and fact predominate over the variations that may exist between members of the BIPA Class, if any.

99. Plaintiff, the members of the BIPA Class, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

100. If individual actions were required to be brought by each member of the BIPA Class injured or affected, the result would be a multiplicity of actions, creating hardship to the Class, to the Court, and to Defendants.

101. A class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the BIPA Class are entitled.

102. Plaintiff and her counsel will fairly and adequately protect the interests of the BIPA Class.

103. Plaintiff retained counsel experienced in complex class action litigation.

104. Defendants violated BIPA by capturing or collecting Plaintiff's and the BIPA Class' fingerprints and/or scans of fingers without first informing them in writing of the purpose of Defendants doing so and the length of time Defendants would store and use Plaintiff's and the BIPA Class' biometric identifiers and/or biometric information.

105. Defendants violated BIPA by capturing or collecting Plaintiff's and the BIPA

Class' fingerprints and/or scans of fingers without first obtaining their written consent or other release authorizing Defendants to capture or collect Plaintiff's and the BIPA Class' biometric identifiers and/or biometric information.

106. Defendants violated BIPA by possessing Plaintiff and the BIPA Class' fingerprints and/or scans of fingerprints without creating a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information.

107. Defendants violated BIPA by, on information and belief, disclosing or otherwise disseminating Plaintiff's and the BIPA Class' fingerprints and/or scans of fingers to their timekeeping system provider without first obtaining Plaintiff's and the BIPA Class' consent for that disclosure or dissemination.

108. Defendants knew or should have known of the requirements of the BIPA. In fact, the same behavior was subject to a previous lawsuit. *See Urbanski v. Hercules Forwarding, Inc.,* No. 2020-CH-03744 (Cook Cty. Cir. Ct. Apr. 7, 2020), *removed* No. 1:20-cv-03926, Dkt. 1 (NDIL July 6, 2020), *remanded* No. 2020-CH-03744 (Cook Cty. Cir. Ct. Oct. 27, 2020), *voluntarily dismissed* (May 10, 2021). Instead of complying with BIPA, Defendants requested potential class members release their individual BIPA claims against them by October 7, 2020, and continued to their earlier, illegal practices unabated. Plaintiff does not recall receiving notice of the purpose and length of time of the continued capture and collection of her and the BIPA Class' biometric identifiers and/or biometric information, nor consenting to such actions thereafter. On information and belief, no publicly available, written BIPA policy establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information was created either.

109. As a result, Defendants' violations of the Biometric Information Privacy Act were reckless or, in the alternative, negligent.

WHEREFORE, Plaintiff and the BIPA Class pray for a judgment against Defendants as follows:

    A.    Awarding liquidated monetary damages to Plaintiff and the BIPA Class for each violation of the Biometric Information Privacy Act as provided by 740 ILCS 14/20(1)-(2);

    B.    Enjoining Defendants from committing further violations of the Biometric Information Privacy Act as authorized by 740 ILCS 14/20(4);

    C.    Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

    D.    Such other and further relief as this Court deems appropriate and just as provided by 740 ILCS 14/20(4).

Respectfully submitted,

Dated: _____

/s/ *Gail S. Eisenberg*
One of Plaintiff's Attorneys

Gail S. Eisenberg
Alexander Loftus
David A. Eisenberg
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, IL 60601
(312) 899-6625
gail@loftusandeisenberg.com
alex@loftusandeisenberg.com
david@loftusandeisenberg.com
*Attorneys for Plaintiff*

17