## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Hercules Forwarding, Inc.** and **Melanie Burnham** (referred to throughout this Agreement as "Employer") and **Elizabeth Pempek** ("Plaintiff"). The term "Party" or "Parties" as used herein shall refer to Employer, Plaintiff, or both, as may be appropriate.

1. **Recitals.**

This Agreement is made with reference to the following facts:

   (a) On or about September 6, 2022, Plaintiff brought an action against Employer, in the United States District Court Northern District of Illinois (the "Court"), captioned as *Elizabeth Pempek v. Hercules Forwarding, Inc. and Melanie Burnham*, Case No.: 22-cv-04760 (the "Lawsuit"). In the Lawsuit, Plaintiff asserts claims for violation of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Biometric Information Privacy Act ("BIPA"). Plaintiff brought her claim under the FLSA on an individual and collective basis, and she brought her claims under the IMWL and BIPA on an individual and class basis;

   (b) On or about June 30, 2023, Michele Kolek ("Kolek") and Annette Vanderploeg ("Vanderploeg") each filed a Notice of Opt-In Consent with the Court through which they became opt-in collective action members to the FLSA claim; and

   (c) There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Plaintiff and Employer have agreed, subject to the provisions in Paragraph 5 below and subject to Kolek and Vanderploeg signing separate settlement agreements, to resolve any and all claims, known and unknown, asserted and unasserted, which Plaintiff has or may have against Employer and/or Employer's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2. **Consideration/Indemnification for Tax Consequences and Liens.**

   (a) In consideration for Plaintiff signing this Agreement, Employer agrees to the following:

   (i) To pay the total gross sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) (the "Settlement Payment"), to be paid as follows:

   (a) one check made payable to "Elizabeth Pempek" in the gross amount of TWO THOUSAND SEVEN HUNDRED EIGHTY-SEVEN DOLLARS AND THIRTY-TWO CENTS ($2,787.32) less applicable taxes for which Employer shall issue an IRS Form W-2 to Plaintiff;

1

      (b)    one check payable to "Elizabeth Pempek" in the amount of FORTY-EIGHT THOUSAND TWO HUNDRED TWELVE DOLLARS AND SIXTY-EIGHT CENTS ($48,212.68) for alleged non-wage damages and alleged penalties for which Employer shall issue an IRS Form 1099-MISC to Plaintiff;

      (c)    one check payable to "Loftus & Eisenberg, Ltd." ("Plaintiff's Counsel") in the amount of TWENTY-FOUR THOUSAND DOLLARS ($24,000.00) for attorneys' fees and costs for which an IRS Form 1099-MISC shall be issued to each of Plaintiff and Plaintiff's Counsel; and

(ii)    To waive any claim for repayment of a loan previously made by Employer to Plaintiff in the remaining amount of SIX THOUSAND SEVEN HUNDRED NINETY DOLLARS ($6,790.00).

(b)    Plaintiff understands and agrees Employer is providing Plaintiff with no representations regarding tax obligations or consequences that may arise from this Agreement. Plaintiff, for Plaintiff and Plaintiff's dependents, successors, assigns, heirs, executors, and administrators (and Plaintiff's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Plaintiff or Plaintiff's Counsel pursuant to Paragraph 2(A) of this Agreement other than that contemplated in paragraph 2(A)(i)(a). Plaintiff agrees that Plaintiff shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)    Plaintiff affirms that, in the event any attorneys or third parties have asserted or assert a hold or lien or other encumbrance or interest in Plaintiff's claims, demands, and causes of action against Releasees, Plaintiff will be responsible for paying any costs and fees associated with and otherwise satisfying that hold or lien or other encumbrance, and will hold Releasees and their attorneys harmless for any costs or fees they incur in association with the hold or lien.

(d)    Any and all settlement payments made by check set forth in this paragraph will be delivered to Plaintiff's Counsel at 825 Lake Ave., Wilmette, Illinois, 60091.

### 3. No Consideration Absent Execution of this Agreement.

Due to their being a bona fide dispute over wages between Plaintiff and Employer, Plaintiff understands and agrees that Plaintiff would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Plaintiff's timely execution of this Agreement and the fulfillment of the promises contained herein.

### 4. Disbursal of Settlement Funds/Dismissal of Action.

(a)    The settlement payment described in Paragraph 2(a) will be sent within three (3) weeks after the latest of the following have occurred:

2

(1) counsel for Employer receives a copy of the Agreement signed by Plaintiff;

(2) counsel for Employer receives copies of settlement agreements signed by Kolek and Vanderploeg;

(3) counsel for Employer receives an executed W-9 Form from Plaintiff's Counsel; and

(4) The Court enters an order approving the Agreement and dismissing Plaintiff's claims.

5. **General Release, Claims Not Released and Related Provisions.**

(a) **General Release of All Claims.** Plaintiff and Plaintiff's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiff has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

Title VII of the Civil Rights Act of 1964;
Sections 1981 through 1988 of Title 42 of the United States Code;
The Employee Retirement Income Security Act of 1974 ("ERISA");
The Internal Revenue Code of 1986;
The Immigration Reform and Control Act;
The Americans with Disabilities Act of 1990;
The Worker Adjustment and Retraining Notification Act;
The Fair Credit Reporting Act;
The Fair Labor Standards Act;
The Family and Medical Leave Act;
The Equal Pay Act;
The Genetic Information Nondiscrimination Act of 2008;
The Age Discrimination in Employment Act of 1967 ("ADEA");
The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
Families First Coronavirus Response Act;
The Illinois Human Rights Act;
820 ILCS 305/4(h) of the Illinois Workers' Compensation Act;
Illinois Minimum Wage Law;
Illinois Wage Payment and Collection Act;
Illinois common law regarding retaliation or discrimination for filing a workers' compensation claim;
Illinois Equal Pay Act;
Illinois School Visitation Rights Act;
Illinois AIDS Confidentiality Act;
Illinois Right to Privacy in the Workplace Act;
Illinois Genetic Information Privacy Act;
Illinois One Day Rest in Seven Act;
Illinois Eight Hour Work Day Act;
Illinois Health and Safety Act;
Illinois Whistleblower Act;
Illinois Victims' Economic Safety and Security Act;
Illinois Worker Adjustment and Retraining Notification Act;
Illinois Personnel Records Review Act;
Illinois Criminal Identification Act;
Illinois Voter Leave Act;
Illinois Family Military Leave Act;
Illinois Joint Agency Rules of Sex Discrimination;
Illinois Joint Agency Rules on National Origin Discrimination;
Illinois Human Rights Commission Rules on Handicap Discrimination;

3

Illinois Human Rights Commission Rules on Unfavorable Military Discharge Discrimination;
Smoke Free Illinois Act;
Illinois Blood Donation Leave Act;
Illinois Civil Patrol Leave Law
Illinois Jury Duty Leave Law
Illinois Official Meetings Leave Law
Illinois Witness Duty Leave Law
Illinois Nursing Mothers in the Workplace Act
Illinois Common Law Claims for Unlawful Retaliatory Discharge in Violation of Public Policy;
Illinois Employee Sick Leave Act;
Illinois Child Bereavement Leave Act;
Illinois Biometric Information Privacy Act;
Illinois Workplace Transparency Act;
Illinois Volunteer Emergency Worker Job Protection Act;
Illinois Gender Violence Act;
Cook County Human Rights Ordinance;
Cook County Earned Sick Leave Ordinance;
Chicago Human Rights Ordinance, as amended;
Chicago Earned Sick Leave Ordinance;
Chicago Anti-Retaliation Ordinance;
Chicago Fair Workweek Ordinance;
any other federal, state or local law, rule, regulation, or ordinance;
any public policy, contract, tort, or common law; or
any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b) **Claims Not Released.** Plaintiff is not waiving any rights Plaintiff may have to: (i) Plaintiff's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the date Plaintiff's employment with Employer ended; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c) **Governmental Agencies.** Nothing in this Agreement prohibits, prevents, or otherwise limits Plaintiff from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Plaintiff's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Plaintiff agrees that if such an administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

(d) **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party alleging a violation of FLSA or IMWL.

6. **Acknowledgements and Affirmations.**

(a) Plaintiff affirms that Plaintiff has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Lawsuit. Nothing in this Agreement or these Affirmations is intended to impair Plaintiff's rights under whistleblower laws or cause Plaintiff to disclose Plaintiff's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(a) Plaintiff also affirms that Plaintiff has reported all hours worked as of the date Plaintiff signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Plaintiff signs this Agreement outside of Plaintiff's claims for alleged overtime wages which are being settled and dismissed herein, and Plaintiff has been reimbursed for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff further affirms that Plaintiff has submitted expense reports for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff affirms that Plaintiff has been granted any leave to which Plaintiff was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(b) Plaintiff further affirms that Plaintiff has no known workplace injuries or occupational diseases.

(c) Plaintiff further affirms that Plaintiff has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Plaintiff has not been retaliated against for reporting or objecting to any such allegations internally to Employer other than as alleged in the Lawsuit.

(d) Plaintiff shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Employer or any Releasee under any circumstances because of, among other things, irreconcilable differences with Employer. Plaintiff agrees that, if Plaintiff accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Plaintiff's employment or work engagement immediately and Plaintiff shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law). In the event that Plaintiff is working for another entity, that merges with, acquires, or is acquired by Employer, Plaintiff need not resign, nor may Plaintiff be terminated based on this provision.

(e) Plaintiff and Employer acknowledge Plaintiff's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

7. **Return of Property.**

Except as provided otherwise in this Agreement or by law, Plaintiff affirms that Plaintiff has returned all of Employer's property, documents, and/or any confidential information in Plaintiff's possession or control.

Plaintiff also affirms that Plaintiff is in possession of all of Plaintiff's property that Plaintiff had at Employer's premises and that Employer is not in possession of any of Plaintiff's property.

8. **Submission to the Court for Purposes of Approval of Settlement.** Employer and Plaintiff intend for Plaintiff to waive any and all claims Plaintiff may have against Releasees from the beginning of time up to and including the date on which Plaintiff signs this Agreement, including claims under the FLSA, the IMWL, and the BIPA and therefore desire that this Agreement be approved by the Court. Accordingly, Employer and Plaintiff agree to the following:

   a. Plaintiff's Counsel will file a Joint Motion for Approval of Settlement and Dismissal of Claims ("Joint Motion") attached hereto as Exhibit A;

   b. In the event the Agreement is reviewed and thereafter rejected by the Court, this Agreement shall be null and void and no payments shall be made pursuant to the Agreement.

9. **Confidentiality.** Plaintiff confirms that prior to the execution of this Agreement, Plaintiff has not revealed the financial terms of the Agreement to any third parties. Except as necessary to obtain approval of this Agreement in accordance with Paragraph 8, Plaintiff agrees not to disclose any information regarding financial terms of this Agreement except to Plaintiff's spouse, tax advisor, or an attorney with whom Plaintiff chooses to consult regarding Plaintiff's consideration of this Agreement. Plaintiff agrees that in the event Plaintiff discloses the financial

6

terms of this Agreement to Plaintiff's spouse, tax advisor, or attorney, Plaintiff will instruct Plaintiff's spouse, tax advisor, or attorney not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement or the financial terms thereof (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television station or any future, current, or former employee, representative, agent, customer, creditor, or competitor of Releasees without the express written consent of Releasees. Plaintiff agrees that confidentiality is the documented preference of Plaintiff and is mutually beneficial to both Parties to this Agreement. Plaintiff also agrees that the consideration in this Agreement includes bargained for consideration in exchange for the promise of confidentiality. This provision shall not be construed to limit Plaintiff's rights under the National Labor Relations Act including, but not limited to, the right to engage in protected concerted activity, including discussing terms and conditions of employment with coworkers, and attempting to improve terms and conditions of employment through channels outside the immediate employee-employer relationship, such as through the National Labor Relations Board.

      **10.** **Neutral Reference.** Any and all requests for reference by or on behalf of Plaintiff shall be directed to Briana Kush at the following email address: bkush@herculesfreight.com. Employer shall only provide Plaintiff's dates of employment and job title. A failure by Plaintiff or anyone seeking a reference at Plaintiff's direction or request, to direct requests for reference pursuant to this paragraph to Kush as referenced above shall constitute a waiver by Plaintiff of the requirement that Employer fulfill its obligation under this paragraph.

      **11.** **Representation.** Plaintiff's Counsel represents and warrants that they do not represent any persons other Plaintiff, Kolek, and Vanderploeg with potential claims against Employer, and Plaintiff's Counsel represents and warrants that they have no intention of search for any such persons.

      **12.** **Medicare Secondary Payer Rules.**

Plaintiff affirms that as of the date Plaintiff signs this Agreement, Plaintiff is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests, as well as any insurance carrier providing benefits under Medicare Part C or Part D) determines that Medicare has an interest in the payment to Plaintiff under this settlement, Plaintiff agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Plaintiff, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Plaintiff is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

      **13.** **Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of Illinois without regard to its conflict of laws provision. In the event of a breach of any provision of this

Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Plaintiff agrees to sign a replacement release in a form that comports with the court's ruling.

### 14. No Admission of Wrongdoing.

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

### 15. Amendment.

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement other than when a provision is severed as discussed above.

### 16. Entire Agreement.

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Plaintiff, which shall remain in full force and effect according to their terms. Plaintiff acknowledges that Plaintiff has not relied on any representations, promises, or agreements of any kind made to Plaintiff in connection with Plaintiff's decision to accept this Agreement, except for those set forth in this Agreement.

### 17. Counterparts and Signatures.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

### 18. Mutual Negotiation.

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

### 19. Third Party Beneficiaries.
All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Plaintiff or any party acting on Plaintiff's behalf.

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**ELIZABETH PEMPEK**

By: *Elizabeth Pempek (Aug 10, 2023 13:17 CDT)*

Date: Aug 10, 2023

**HERCULES FORWARDING, INC.**

By: *[signature]*

Date: 8/17/23

**LOFTUS & EISENBERG, LTD**

By: *Gail S Eisenberg*

Date: Aug 10, 2023

**MELANIE BURNHAM**

By: *[signature]*

Date: 8/17/23

## Exhibit A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ELIZABETH PEMPEK, on behalf of herself and all other persons similarly situated, known and unknown, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 1:22-cv-04760 |
| v. | )<br>)<br>) |
| HERCULES FORWARDING, INC. and MELANIE BURNHAM, individually. | )<br>)<br>) |
| Defendants. | ) |

## JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT AND DISMISSAL OF COMPLAINT

Defendants Hercules Forwarding, Inc. ("Hercules") and Melanie Burnham ("Burnham") (collectively, "Defendants") and Plaintiff Elizabeth Pempek ("Plaintiff") and Opt-In Plaintiffs Michele Kolek and Annette Vanderploeg ("Opt-In Plaintiffs") (with Plaintiff, "Plaintiffs") (Plaintiffs with Defendants, the "Parties"), by and through their respective attorneys, jointly move the Court to approve the settlement entered into by the Parties. In support of this Motion, the Parties state as follows:

1. Plaintiff filed a Complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Biometric Information Privacy Act ("BIPA") arising out of Plaintiff's employment with Hercules. With respect to Plaintiff's claims under the FLSA and IMWL, Plaintiff specifically alleges that she was misclassified as exempt and did not receive overtime pay when she worked more than forty hours in a workweek. (Dkt. No. 1.)

2. Plaintiff and Defendants engaged in a settlement conference before Magistrate Judge Jeffrey Cummings, which has resulted in the Parties reaching agreement on the terms of a settlement as reflected in the Settlement Agreement and General Release, which is attached hereto as Exhibit 1.

3. On or about June 30, 2023, the Opt-In Plaintiffs each filed a Notice of Opt-In Consent with the Court through which they became opt-in collective action members to the FLSA claim.

4. After the Opt-In Plaintiffs filed their Notices of Opt-In Consent, counsel for the Parties were able to reach agreement on the terms of a settlement as reflected in the Settlement and Release Agreement, which is attached hereto as Exhibit 2.

3. When an employee asserts a claim against her employer or former employer for wages under the FLSA or the IMWL, any settlement of that claim requires a court to review the settlement for fairness. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (FLSA); *Lynn's Food Stores, Inc. v. U.S.*, 679 1350, 1352 (11th Cir. 1982) (FLSA); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (FLSA); *Lewis v. Gioardano's Enterprises, Inc.*, 921 N.E.2d 740, 751 (1st Dist. 2009) (IMWL).

4. The settlement reached by the Parties is fair to the Plaintiffs. Although Plaintiffs were classified as exempt from the FLSA and IMWL while employed by Hercules, Hercules recorded Plaintiffs' hours of work so the Parties were able to precisely calculate the overtime pay allegedly due to the Plaintiffs. The settlement provides that Plaintiffs are paid in full for this amount, along with any liquidated damages and penalties that they could recover under the FLSA and IMWL.

5. Accordingly, the Parties submit that the payment Plaintiffs will be receiving

pursuant to the settlement agreements fairly and reasonably compensates them for relinquishing their FLSA and IMWL claims that they may have against Defendants.

6. The Parties submit that the settlement agreements were reached through arms' length negotiations between the Parties, who were all represented by counsel with significant experience with the FLSA and the IMWL.

7. Lastly, Plaintiff's attorney's fees and costs are reasonable because of the issues presented in this case, and the amount of resources dedicated to analysis and prosecution of Plaintiffs' claims. Counsel's 1/3 contingency fee arrangement with Plaintiffs "is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients." *Castillo v. Noodles & Co.*, 16-cv-03036 2016 U.S. Dist. LEXIS 178977, *10 (N.D. Ill. Dec. 23, 2016) (approving 1/3 contingency fee on FLSA common fund settlement).

8. Accordingly, the Parties request the Court approve the settlement agreements as a fair and reasonable resolution of bona fide disputes over wages under the FLSA and the IMWL.

9. Upon approval of the settlement agreements, the Parties further request the dismissal of the suit, initially without prejudice and converting to one with prejudice within thirty (30) days, with each party to bear its or their own costs and attorneys' fees except as provided for in the settlement agreements.

WHEREFORE, for the foregoing reasons, Plaintiff and Defendants respectfully request that this Court enter an Order: (i) approving the settlement agreements as fair and reasonable resolutions of bona fide disputes under the FLSA and the IMWL, and (ii) dismissing this suit as set forth above and with each party to bear its or their own costs and attorneys' fees except as provided for in the Agreement.

Dated: July___, 2023                                    Respectfully submitted,

| ELIZABETH PEMPEK | HERCULES FORWARDING, INC. and MELANIE BURNHAM |
|---|---|
| By: /s/ DRAFT<br>Gail S. Eisenberg<br>Alexander Loftus<br>David A. Eisenberg<br>Loftus & Eisenberg, Ltd.<br>161 N. Clark St., Ste. 1600<br>Chicago, IL 60601<br>(312) 899-6625<br>gail@loftusandeisenberg.com<br>alex@loftusandeisenberg.com<br>david@loftusandeisenberg.com | By: /s/ DRAFT<br>Jeffrey L. Rudd<br>Julia P. Argentieri<br>Derek S. Franklin<br>Jackson Lewis P.C.<br>150 N. Michigan Ave., Ste. 2500<br>Chicago, IL 60601<br>(312) 787-4949<br>jeffrey.rudd@jacksonlewis.com<br>julia.argentieri@jacksonlewis.com<br>derek.franklin@jacksonlewis.com |

4878-4349-7581, v. 2

# Settlement Agreement (Hercules_Pempek) (Execution Copy) (1)

**Final Audit Report**          2023-08-10

| | |
|---|---|
| Created: | 2023-08-10 |
| By: | Gail S. Eisenberg (gail@loftusandeisenberg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxVb0FZt-iIJ9PbusnSuX8moynGH-_9rF |

## "Settlement Agreement (Hercules_Pempek) (Execution Copy) (1)" History

- Document created by Gail S. Eisenberg (gail@loftusandeisenberg.com)
  2023-08-10 - 4:24:11 PM GMT- IP address: 73.74.157.253

- Document emailed to Elizabeth Pempek (ejpempek@gmail.com) for signature
  2023-08-10 - 4:24:57 PM GMT

- Email viewed by Elizabeth Pempek (ejpempek@gmail.com)
  2023-08-10 - 6:14:39 PM GMT- IP address: 66.102.6.146

- Document e-signed by Elizabeth Pempek (ejpempek@gmail.com)
  Signature Date: 2023-08-10 - 6:17:17 PM GMT - Time Source: server- IP address: 166.199.152.81

- Document emailed to Gail S. Eisenberg (gail@loftusandeisenberg.com) for signature
  2023-08-10 - 6:17:18 PM GMT

- Email viewed by Gail S. Eisenberg (gail@loftusandeisenberg.com)
  2023-08-10 - 6:17:48 PM GMT- IP address: 73.74.157.253

- Document e-signed by Gail S. Eisenberg (gail@loftusandeisenberg.com)
  Signature Date: 2023-08-10 - 6:18:05 PM GMT - Time Source: server- IP address: 73.74.157.253

- Agreement completed.
  2023-08-10 - 6:18:05 PM GMT



**Adobe Acrobat Sign**